# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JUDITH M. SODERBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APELLIS PHARMACEUTICALS, INC., CEDRIC FRANCOIS, FEDERICO GROSSI, and TIMOTHY SULLIVAN,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Judith M. Soderberg ("Plaintiff"), by and through her counsel, alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Apellis Pharmaceuticals, Inc. ("Apellis" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Apellis common stock between January 28, 2021, and July 28, 2023, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2.      Apellis is a commercial-stage biopharmaceutical company that focuses on the discovery, development, and commercialization of therapeutic compounds through the inhibition of the complement system for autoimmune and inflammatory diseases.

3.      One of Apellis's leading therapeutic treatments, "SYFOVRE," is an intravitreal pegcetacoplan injection that is the first and only approved therapy for geographic atrophy ("GA"), a leading cause of blindness.  SYFOVRE is designed to provide comprehensive control of the complement cascade, part of the body's immune system.  In February 2023, SYFOVRE was approved by the U.S. Food and Drug Administration ("FDA") in the United States for the treatment of GA secondary to age-related macular degeneration ("AMD").

4.      The Class Period begins on January 28, 2021, to coincide with Apellis's Virtual Investor Event wherein the Company gave an online presentation to shareholders titled, "Pegcetacoplan: Advancing the First Potential Treatment for Geographic Atrophy (GA)," which highlighted its ongoing Phase 3 "DERBY and OAKS" clinical trials and its completed Phase 2 "FILLY" clinical trial.  In its presentation to shareholders, the Company touted the efficacy of using pegcetacoplan in patients with GA, including that the Phase 2 FILLY trial showed decreased lesion growth and that safety was "in line with other studies of intravitreally administered agents."

5.      Throughout the Class Period, Defendants repeatedly represented that SYFOVRE "demonstrated a favorable safety profile" with minimal adverse effects and "no events of retinal vasculitis or retinal vein occlusion" observed.

6.      Notwithstanding Defendants' claims regarding the safety of SYFOVRE, investors began to learn the truth on July 15, 2023, when the American Society of Retina Specialists

("ASRS") published a letter highlighting concerns with SYFOVRE. Specifically, the ASRS indicated that physicians have reported cases of eye inflammation in patients treated with SYFOVRE, including six instances of occlusive retinal vasculitis, a type of inflammation that blocks blood flow through the vessels that feed the retina and potentially results in blindness.

7.      On this news, the price of Apellis common stock declined $32.04 per share, or nearly 38%, from a close of $84.50 per share on July 14, 2023, to close at $52.46 per share on July 17, 2023.

8.      After the market closed on July 17, 2023, Apellis issued a statement addressing the concerns raised by ASRS regarding vasculitis and SYFOVRE, explaining that, of the six occurrences of vasculitis following SYFOVRE treatment, "two of the events were confirmed as occlusive, one was confirmed as non-occlusive, and the remaining three were undetermined based on limited information and lack of imaging." The Company further acknowledged that "[t]he Company is continuing to conduct a thorough investigation of each of the events, working closely with the [ASRS] and several external specialists."

9.      On this news, the price of Apellis common stock declined an additional $12.46 per share, or 23.75%, to close at $40.00 per share on July 18, 2023.

10.     Prior to the open of the market on July 20, 2023, Wedbush downgraded Apellis's price target by more than 50%, from $86.00 per share to $40.00 per share.

11.     On this news, the price of Apellis common stock declined $6.25 per share, or approximately 15%, from a close of $40.49 per share on July 19, 2023, to close at $34.24 per share on July 20, 2023.

12.     On July 29, 2023, Apellis provided an update on the Company's review of the six events of retinal vasculitis reported by the ASRS concerning SYFOVRE treatments. In the update,

Apellis confirmed a seventh event of retinal vasculitis resulting from SYFOVRE treatment as determined by Apellis' internal safety committee and external retina/uveitis specialists.  Apellis also stated that the Company is evaluating an eighth reported event of retinal vasculitis, which the Company had not yet confirmed.

13.     On this news, the price of Apellis common stock declined $6.27 per share, or approximately 19.6%, from a close of $32.02 per share on July 28, 2023, to close at $25.75 per share on July 31, 2023.

14.     This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) the design of SYFOVRE's clinical trials was insufficient to identify incidents of retinal vasculitis in patients receiving SYFOVRE injections; (2) as a result, the commercial adoption of SYFOVRE was subject to significant, unknown risk factors; and (3) therefore, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

15.     As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock when the truth was revealed, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.     **JURISDICTION AND VENUE**

16.     Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Apellis is incorporated in this District.

19.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.    <u>PARTIES</u>

20.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Apellis common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

21.     Defendant Apellis is a Delaware corporation with principal executive offices at 100 Fifth Avenue, Waltham, Massachusetts, 02451.

22.     Defendant Cedric Francois ("Francois") was, at all relevant times, the Company's Chief Executive Officer and a Company director.

23.     Defendant Timothy Sullivan ("Sullivan") was, at all relevant times, the Company's Chief Financial Officer and Treasurer.

24.     Defendant Federico Grossi ("Grossi) served as the Company's Chief Medical Officer from April 2019 until January 3, 2023.

25.     Defendants Francois, Sullivan, and Grossi are collectively referred to herein as the "Individual Defendants."

26.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Apellis's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged

herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

27.     Apellis and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   Background

28.     Apellis is a commercial-stage biopharmaceutical company that focuses on the discovery, development, and commercialization of therapeutic compounds through the inhibition of the complement system for autoimmune and inflammatory diseases.  Apellis's common stock trades on the Nasdaq under the ticker symbol "APLS."

29.     Apellis's leading therapeutic treatment, SYFOVRE, is an intravitreal pegcetacoplan injection that is the first and only FDA approved therapy for GA, a leading cause of blindness.  SYFOVRE is designed to provide comprehensive control of the complement cascade, part of the body's immune system.  SYFOVRE was approved by the FDA in February 2023 for the treatment of GA secondary to AMD in the United States.

### B.   Defendants' False and Misleading Statements

30.     The Class Period begins on January 28, 2021, to coincide with Apellis's Virtual Investor Event wherein the Company gave an online presentation titled, "Pegcetacoplan: Advancing the First Potential Treatment for Geographic Atrophy (GA)."   In their presentation, Apellis touted the efficacy of using pegcetacoplan in patients with GA, including that the "Phase 2

FILLY study met [its] primary endpoint, reducing GA lesion growth," and that safety was "in line with other studies of intravitreally administered agents."  Likewise, in reporting on expectations for the Phase 3 DERBY and OAKS trials, the Company represented that the DERBY and OAKS trials would improve upon the robust FILLY trial with "[t]op-line results expected Q3 2021."

31.     On September 9, 2021, the Company announced top-line data for the DERBY and OAKS trials after a 12-month period.  Among other things, Apellis noted that "[p]egcetacoplan was well tolerated in both Phase 3 studies."  Critically, the Company also reported that "[n]o events of retinal vasculitis or retinal vein occlusion were observed" and that "[t]here were no clinically relevant changes in vision for patients who developed infectious endophthalmitis or intraocular inflammation."  On October 11, 2021, Apellis published a presentation titled, "Safety of intravitreal pegcetacoplan in geographic atrophy: results from the DERBY and OAKS trials."  In connection with this presentation, Apellis represented that there "were no cases of vasculitis or occlusive vasculitis" to date in the OAKS and DERBY trials.

32.     Likewise, on November 8, 2021, Apellis discussed results for the DERBY and OAKS trials in its Form 10-Q quarterly report for the quarter ending September 30, 2021.  Among other things, Apellis reported that "[n]o events of retinal vasculitis or retinal vein occlusion were observed" to date in the DERBY and OAKS trials.  The Company also stated that "[t]here were no clinically relevant changes in vision for patients who developed infectious endophthalmitis or intraocular inflammation."

33.     During the Company's quarterly conference call held later that day, Defendant Grossi similarly touted that "pegcetacoplan demonstrated a favorable safety profile across both studies."

34.     On November 12, 2021, Apellis published a presentation titled "Treatment of Geographic Atrophy Secondary to Age-Related Macular Degeneration With Pegcetacoplan: Updates on the Randomized Phase 3 DERBY and OAKS Trials."   In the presentation, the Company again touted the safety of SYFOVRE, noting that "[t]here were no cases of vasculitis or occlusive vasculitis."

35.     On February 28, 2022, the Company filed its annual report for the fiscal year ended December 31, 2021, on Form 10-K.  In the annual report, Apellis again stated that "[n]o events of retinal vasculitis or retinal vein occlusion were observed" in the DERBY and OAKS trials and that "[t]here were no clinically relevant changes in vision for patients who developed infectious endophthalmitis or intraocular inflammation."   The Company also stated that it "expect[ed] to report additional 18-month safety and efficacy data in March 2022 and 24-month data, including the functional secondary endpoints, during the third quarter of 2022."

36.     On March 16, 2022, the Company announced longer-term data from its Phase 3 DERBY and OAKS trials and again touted "that intravitreal pegcetacoplan continued to reduce geographic atrophy, or GA, lesion growth and demonstrated a favorable safety profile at month 18 for the treatment of GA secondary to age-related macular degeneration, or AMD."   Apellis also reported that "[r]ates of endophthalmitis and intraocular inflammation continue to be generally in line with those reported in studies of other intravitreal therapies" and assured investors that "[n]o events of retinal vasculitis or retinal vein occlusion were observed."

37.     During the Company's conference call held later that day, Defendant Grossi reiterated that "pegcetacoplan continue[s] to demonstrate a favorable safety profile" and that "[t]here were no events of retinal vasculitis or retinal vein occlusion."

38.     Two months later, on May 2, 2022, the Company published a presentation titled, "Efficacy of intravitreal pegcetacoplan in patients with geographic atrophy (GA): 18-month results from the phase 3 OAKS and DERBY studies."  In the presentation, Apellis again stated that "no cases of retinitis or vasculitis (occlusive or nonocclusive) were reported."

39.     On July 14, 2022, Apellis published a follow-up presentation titled, "Safety of Intravitreal Pegcetacoplan for Geographic Atrophy (GA): 18-Month Results from the DERBY and OAKS trials," and reported that "[p]egcetacoplan was well tolerated through Month 18" of the studies and that, out of the occurrences of patients experiencing intraocular inflammation, there were "[n]o reports of retinitis or vasculitis (occlusive or non-occlusive)."

40.     On August 8, 2022, Apellis filed its Form 10-Q quarterly report for the quarter ended June 30, 2022.  In the quarterly report, the Company reiterated that, "[a]t month 18, pegcetacoplan continued to demonstrate a favorable safety profile, consistent with safety at 12 months and longer-term exposure to intravitreal injections."  Critically, Apellis also represented that "[r]ates of endophthalmitis and intraocular inflammation continue to be generally in line with those reported in studies of other intravitreal therapies" and that "[n]o events of retinal vasculitis or retinal vein occlusion were observed."

41.     Then, on August 24, 2022, the Company announced top-line data for the DERBY and OAKS trials after a 24-month period.  Among other things, Apellis noted that "[p]egcetacoplan continued to demonstrate a favorable safety profile, consistent with safety data to date and longer-term exposure to intravitreal injections."  Again, Apellis also stated that "[n]o events of occlusive vasculitis or retinitis were observed over 24 months."

42.     On a conference call discussing the 24-month results for the Phase 3 DERBY and OAKS trial on August 24, 2022, Defendant Francois reiterated that the results continued to show

"a favorable safety profile in line with what we saw at 12 and 18 months." Defendant Grossi similarly represented that "pegcetacoplan continues to demonstrate a favorable safety profile" and that "no events of occlusive vasculitis or retinitis were observed across the entirety of both studies."

43.     On November 3, 2022, Apellis published an updated presentation titled, "Safety of intravitreal pegcetacoplan in geographic atrophy: 24-month results from the OAKS and DERBY phase 3 trials." The Company again reported "[n]o reports of occlusive or nonocclusive retinitis or vasculitis."

44.     During the "5th Annual Evercore ISI HealthCONx Conference 2022" on November 29, 2022, in response to a participant's question that, "to date, no vasculitis or retinitis" had been observed, Defendant Francois confirmed, "[t]hat is correct."

45.     On February 17, 2023, Apellis held a conference call discussing the FDA approval of pegcetacoplan injections for the treatment of GA under the name SYFOVRE.  In the presentation accompanying the call, the Company touted SYFOVRE as "[t]he **first and only** FDA approved treatment for geographic atrophy secondary to age-related macular degeneration." The Company also represented that SYFOVRE showed a "[w]ell-demonstrated safety profile" following approximately 12,000 injections over a 24-month period.  Moreover, the Company again highlighted that "**[n]o events** of occlusive or non-occlusive vasculitis or retinitis were observed" during the DERBY and OAKS trials.

46.     On February 21, 2023, the Company filed its annual report for the fiscal year ended December 31, 2022, on Form 10-K.  In the annual report, Apellis again stated that "SYFOVRE was well-tolerated in both DERBY and OAKS" and that "[n]o events of occlusive or non-occlusive vasculitis or retinitis occlusion were observed over 24 months" in the DERBY and OAKS trials.

47.     The above statements identified in ¶¶ 30-46 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) the design of SYFOVRE's clinical trials was insufficient to identify incidents of retinal vasculitis in patients receiving SYFOVRE injections; (2) as a result, the commercial adoption of SYFOVRE was subject to significant, unknown risk factors; and (3) therefore, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

**C.     The Truth Begins to Emerge**

48.     On July 15, 2023, the ASRS's Research and Safety in Therapeutics ("ReST") Committee issued a notice reporting occurrences of retinal vasculitis in patients receiving SYFOVRE treatment.  Specifically, the ASRS ReST Committee indicated that ophthalmologists had observed six instances of retinal vasculitis following SYFOVRE treatments.

49.     On this news, the price of Apellis common stock declined $32.04 per share, or approximately 38%, from a close of $84.50 per share on July 14, 2023, to close at $52.46 per share on July 17, 2023.

50.     Then, after the market closed on July 17, 2023, the Company issued a statement addressing the concerns raised by ASRS regarding vasculitis and SYFOVRE, explaining that:

> All events were observed after the first injection of SYFOVRE, between 7-13 days after drug administration, and with no specific lots implicated.  Upon review with external experts, two of the events were confirmed as occlusive, one was confirmed as non-occlusive, and the remaining three were undetermined based on limited information and lack of imaging.  The etiology of these events is unclear, and outcomes in these patients are still evolving.
>
> *        *        *
>
> The Company is continuing to conduct a thorough investigation of each of the events, working closely with the ReST Committee and several external specialists.  Apellis takes adverse event reporting

very seriously and immediately followed up with the FDA upon receiving the reports of vasculitis.  In this regard, each event was reviewed with the FDA and no action is planned at this time.  The Company has updated ReST on these interactions and will continue to do so should new information become available.

51.     On this news, the price of Apellis common stock declined $12.46 per share, or 23.75%, from a close of $52.46 per share on July 17, 2023, to close at $40.00 per share on July 18, 2023.

52.     Prior to the open of market hours on July 20, 2023, given the recently disclosed vasculitis risks, Wedbush downgraded Apellis's price target by more than 50%, from $86.00 per share, to $40.00 per share.

53.     On this news, the price of Apellis common stock declined $6.25 per share, or approximately 15%, from a close of $40.49 per share on July 19, 2023, to close at $34.24 per share on July 20, 2023.

54.     On July 29, 2023, Apellis issued a press release providing an update on the Company's review of the six events of retinal vasculitis reported by the ASRS concerning SYFOVRE treatments.  In the update, Apellis confirmed a seventh event of retinal vasculitis resulting from SYFOVRE treatment as determined by Apellis' internal safety committee and external retina/uveitis specialists.  Additionally, Apellis stated that the Company is evaluating an eighth reported event of retinal vasculitis, which the Company had not yet confirmed.

55.     On this news, the price of Apellis common stock declined $6.27 per share, or approximately 19.6%, from a close of $32.02 per share on July 28, 2023, to close at $25.75 per share on July 31, 2023.

V.     **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

56.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired

Apellis common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of Apellis, and their families and affiliates.

57.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

58.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.    Whether Defendants violated the Exchange Act;

      b.    Whether Defendants omitted and/or misrepresented material facts;

      c.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.    Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

      e.    Whether the price of Apellis common stock was artificially inflated; and

      f.    The extent of damage sustained by members of the Class and the appropriate measure of damages.

59.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

60.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

62.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

    a.     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.     The omissions and misrepresentations were material;

    c.     The Company's common stock traded in an efficient market;

    d.     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e.     Plaintiff and the Class purchased Apellis common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

63.     At all relevant times, the market for the Company's common stock was efficient because:  (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the

major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

64.   Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

65.   Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The prices of Company common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, which began to be revealed in July 2023, causing investors' losses.  As a result of their purchases of Apellis common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.    SCIENTER ALLEGATIONS

66.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Company common stock during the Class Period.

## X.    CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

67.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

68.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Company common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

69.    Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

71.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

72.     The Individual Defendants acted as controlling persons of Apellis within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

74.     As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in

this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company common stock during the Class Period.

## XI.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.    Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    d.    Such other and further relief as the Court may deem just and proper.

## XII.    <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: August 2, 2023

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*Of Counsel:*

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
Jonathan Z. Naji
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com

*Counsel for Plaintiff Judith M. Soderberg*

Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
jnaji@ktmc.com

*Counsel for Plaintiff Judith M. Soderberg*

## CERTIFICATION

I, Judith M. Soderberg, declare that:

1.      I have reviewed the facts and allegations of the Class Action Complaint for Violations of the Federal Securities Laws and authorize its filing.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in Apellis Pharmaceuticals, Inc. securities that are the subject of this action are attached in Schedule A.  I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: ___8/1/2023___            _Judith Soderberg_____

                                       Judith M. Soderberg

**SCHEDULE A**

| Security | Buy/Sell | Date | Quantity | Price |
|----------|----------|------|----------|-------|
| Com Stk | Buy | 2/28/2023 | 50 | $65.62 |
| Com Stk | Buy | 7/17/2023 | 50 | $64.50 |
| Com Stk | Buy | 7/18/2023 | 100 | $40.15 |
| Com Stk | Sell | 7/21/2023 | 100 | $36.50 |